___

**SO ORDERED,**

*/s/ Neil P. Olack*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: June 26, 2019**

**The Order of the Court is set forth below. The docket reflects the date entered.**
___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **R. LANCE JOHANSEN AND TAMELA R. JOHANSEN** | **CASE NO. 17-50738-NPO** |
| **DEBTORS.** | **CHAPTER 7** |
| **DREUX SEGHERS** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 17-06039-NPO** |
| **R. LANCE JOHANSEN** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER ON COMPLAINT

This matter came before the Court[1] for hearing on May 1-2, 2019 (the "Trial"), on the Complaint Objecting to Discharge of a Particular Debt ("the Complaint") (Adv. Dkt. 1)[2] filed by Dreux Seghers ("Seghers"); the Debtor's Answer to Complaint Objecting to Discharge of a

___

[1] The above-styled bankruptcy case (the "Bankruptcy Case") and adversary proceeding (the "Adversary") were transferred from the Honorable Katharine M. Samson, United States Bankruptcy Judge, Southern District of Mississippi to the Honorable Neil P. Olack, United States Bankruptcy Judge, Southern District of Mississippi on February 12, 2019.

[2] Citations to the record are as follows: (1) citations to docket entries in the Adversary are cited as "(Adv. Dkt. \_\_\_)"; (2) citations to docket entries in the Bankruptcy Case are cited as "(Bankr. Dkt. \_\_\_)"; and citations to docket entries in separate but related cases before the U.S. District Court for the Southern District of Mississippi are cited as "(Case No.\_\_\_\_, Dkt. \_\_\_\_)".

Particular Debt ("the Answer") (Adv. Dkt. 7) filed by R. Lance Johansen ("Johansen"); the Memorandum Brief in Support of Exception to Discharge in Bankruptcy (Adv. Dkt. 45) filed by Seghers; and the Memorandum Brief on Arbitrator's Immunity (Adv. Dkt. 46) filed by Seghers. The Pretrial Order (the "PTO") (Adv. Dkt. 70) was entered on April 11, 2019. At Trial, Virgil G. Gillespie represented Seghers, and Mark H. Tyson represented Johansen.

In his case-in-chief, Seghers testified on his own behalf and called Johansen as an adverse witness. Johansen testified in his own defense. Seghers introduced into evidence twenty-nine (29) exhibits, and Johansen introduced into evidence twelve (12) exhibits.[3] Seghers asks the Court to liquidate his state-law claims against Johansen in the total amount of $1,375,482.69 and enter a judgment declaring the debt non-dischargeable under 11 U.S.C. § 523(a)(6).[4] Having considered the pleadings as well as the testimony, exhibits, and arguments of counsel, the Court finds that Johansen does not owe Seghers any non-dischargeable debt, and finds as follows:[5]

---

[3] The exhibits introduced into evidence at Trial by Seghers are cited as "(Ex. P-___)", and exhibits introduced into evidence by Johansen are cited as "(Ex. D-___)".

[4] In the Complaint, Seghers also alleged that the debts are non-dischargeable under 11 U.S.C. § 523(a)(10). But at Trial, counsel for Seghers conceded that § 523(a)(10), which excepts from discharge any debt scheduled in a prior case where the debtor waived the discharge or was denied the discharge, does not apply. 9:19:23 – 9:19:48 (May 2, 2019). Because the Trial was not transcribed, references to the argument and testimony presented at Trial are cited by the timestamp of the audio recording.

[5] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court without regard to which section of the Opinion they are found.

### Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to the Adversary pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (I), and (O).[6] Notice of the Trial was proper under the circumstances.

### Introduction

During June 2006 to September 2007, Seghers, a licensed civil engineer, arbitrated a construction dispute between Johansen and Douglas Borries d/b/a Borries Construction Co. ("Borries"), then the subject of litigation in the Chancery Court of Harrison County, Mississippi, Second Judicial District (the "Chancery Court") in Cause No. C2402-04-948(3) (the "Chancery Lawsuit"). Aggrieved by the arbitration award, Johansen filed suit against Seghers and his employer, WINK Companies, LLC ("WINK"), in the Circuit Court of Harrison County, Mississippi, Second Judicial District (the "Circuit Court") in Cause No. A2402-08-98 (the "Circuit Lawsuit"), seeking damages for their alleged breach of the arbitration agreement and for intentional and negligent infliction of emotional distress. In response, WINK filed a motion to dismiss, and Seghers filed an answer denying Johansen's allegations. Seghers also asserted a counterclaim against Johansen, alleging abuse of process, malicious prosecution, vexatious litigation, and punitive damages. The Adversary stems from Seghers' counterclaim. The claims asserted by Johansen in the Circuit Lawsuit remain pending. Although Seghers' arbitration of the construction dispute is not at issue before this Court, the facts concerning the Chancery Lawsuit

---

[6] The Court notes that the damages Seghers requests are purely economic and thus his claims do not concern "personal injury torts" within the meaning of 28 U.S.C. § 157(b)(2)(B). *See, e.g.*, *In re Gawker Media LLC*, 571 B.R. 612, 619-24 (Bankr. S.D.N.Y. 2017).

and Seghers' role as the arbitrator of the construction dispute are necessary to provide context to the claims asserted in the Adversary.

**Facts**

1. In July 2003, Johansen contracted with Borries to construct a pier and a bulkhead at Johansen's residence in Biloxi, Mississippi. (Ex. P-1) After a dispute concerning the construction arose, Borries initiated the Chancery Lawsuit in October 2004 by filing a complaint against Johansen. (*Id.*) Johansen answered Borries' complaint and filed a counterclaim. (Ex. P-2).

2. Pursuant to a written Agreement to Appoint Arbitrator to Determine Liability and Damages (the "Arbitration Agreement") (Exs. P-3, D-1), Johansen and Borries agreed to arbitrate the Chancery Lawsuit. The Arbitration Agreement required the arbitrator to meet with both parties "[w]ithin thirty (30) days of his appointment" and "submit an initial written report ("Initial Report") to both Parties within thirty (30) days of his last meeting with the party." (*Id.*) Thereafter, the parties had "ten (10) days to respond" with "any disagreement and supporting evidence." (*Id.*) The arbitrator then had fifteen (15) days to submit a final written report ("Final Report") to the parties. (*Id.*) The Arbitration Agreement provided that "[t]he Final Report of the Arbitrator [would] be final and binding on the Parties and [would] not be subject to appeal." (*Id.*)

3. Johansen and Borries agreed that two attachments to the Arbitration Agreement— a drawing of the new dock and an "Explanation" sheet—accurately reflected the amount of work that Borries performed before he left the job site and that Borries performed no additional work after February 20, 2004. (*Id.*) The drawing is labeled "New Dock Layout Plan," and the "Explanation" sheet is an accounting of the "Total Decking Areas" installed by Borries as shown in the drawing. (*Id.*) In the Arbitration Agreement, Johansen and Borries agreed to allow Britt

Singletary ("Singletary") to appoint an arbitrator "with expertise relating to construction and design of marine piers and bulkheads to evaluate the work performed by Borries." (Exs. P-3, D-1).

4. In June 2006, Seghers accepted the appointment by Singletary as arbitrator of the claims in the Chancery Lawsuit. (Ex. D-3) On August 18, 2006, Seghers met separately with Borries to inspect the construction site at Johansen's residence. (*Id.*) Seghers also met separately with Johansen to conduct a similar inspection on September 9, 2006. (*Id.*)

5. On May 7, 2007, Seghers issued his Initial Report (Ex. D-3) ordering Johansen to pay Borries $68,372.00, representing the difference between the total value of the project and the amount Johansen already had paid Borries. On September 18, 2007, Seghers issued his Final Report (Exs. P-6, D-4), which increased the award to Borries to $113,263.78.

6. On November 8, 2007, Borries filed the Motion to Reduce the Arbitration Ruling to Final Judgment in the Chancery Court. (Ex. D-6) Five days later, Johansen filed a response, arguing that the construction dispute should be remanded to Seghers for consideration of additional damages and costs incurred by Johansen as a result of the "unworkmanlike and incomplete work performed by Borries" that were not considered in the Final Report. (Ex. D-7). On December 19, 2007, the Chancery Court entered a Judgment Reducing Arbitration Findings to a Final Judgment (the "Final Judgment") (Ex. P-7) adopting the Final Report in its entirety.

7. On July 8, 2008, Johansen initiated the Circuit Lawsuit by suing Seghers and WINK, jointly and severally, for breach of contract, tortious breach of contract, and intentional and negligent infliction of emotional distress. (Ex. P-9) In the Circuit Lawsuit, Johansen alleged that "Seghers, acting individually and as a representative and agent of WINK Companies, LLC.,

breached his contractual duties by grossly failing to honor and follow the Arbitration Agreement . . . ." (*Id.*)

8. In the Circuit Lawsuit, Seghers filed an answer denying liability and asserted a counterclaim alleging that Johansen's initiation and pursuit of the Circuit Lawsuit amounted to an abuse of civil process, malicious prosecution, and vexatious litigation. (Ex. P-10). Johansen filed an answer to the counterclaim denying liability. (Ex. P-15).

9. WINK filed a motion to dismiss the claims asserted against it in the Circuit Lawsuit on the ground there was no contract between Johansen and WINK, and Seghers was not acting within the course and scope of his employment with WINK. (Exs. P-11, P-12). Seghers submitted an affidavit in support of WINK's motion to dismiss. By stipulation of the parties, WINK was dismissed with prejudice as a defendant in the Circuit Lawsuit under Mississippi Rule of Civil Procedure 41 on September 23, 2008. (Ex. P-14).

10. On February 18, 2013, Johansen and his spouse, Tamela R. Johansen (together with Johansen, the "Debtors"), filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code (the "Prior Bankruptcy Case") (Case No. 13-50295-KMS, Bankr. Dkt. 1), which was dismissed pursuant to an agreed order on March 27, 2014 (Case No. 13-50295-KMS, Bankr. Dkt. 237). The Debtors did not disclose the Circuit Lawsuit or list Seghers as a creditor in the Prior Bankruptcy Case.

11. On April 13, 2017, the Debtors jointly filed a voluntary petition for relief (the "Petition") (Bankr. Dkt. 1) pursuant to chapter 7 of the United States Bankruptcy Code. In Amended Schedule E/F: Creditors Who Have Unsecured Claims (Bankr. Dkt. 23), the Debtors indicated that Seghers had a nonpriority, unsecured claim in an unknown amount, but they did not

specify whether Seghers' claim was contingent, unliquidated, or disputed. The Debtors did not disclose the Circuit Lawsuit as an asset in their bankruptcy schedules.

12. The filing of the Petition resulted in an automatic stay of Seghers' counterclaim in the Circuit Lawsuit under 11 U.S.C. § 362.[7]

13. On July 24, 2017, Seghers initiated the Adversary by filing the Complaint. In the Complaint, Seghers alleges that the institution of the Circuit Lawsuit was an "unconscionable and malicious abuse of the civil process" and "amount[ed] to malicious prosecution and vexatious litigation." (Compl. ¶ 6).[8] These allegations mirror those made by Seghers in his counterclaim in the Circuit Lawsuit. In the Adversary, Seghers seeks damages of $2.5 million and contends that the debt is non-dischargeable pursuant to § 523(a)(6) and § 523(a)(10). (*Id.* ¶ 2).

14. The Debtors were granted a discharge of all pre-petition debts, except those rendered non-dischargeable under § 523(a), on August 8, 2017. (Bankr. Dkt. 28).

15. On August 21, 2017, Johansen filed the Answer denying any liability.

## Discussion

Seghers initiated the Adversary prior to any determination of Johansen's liability in the Circuit Lawsuit. Thus, before reaching the merits of the dischargeability issue, the Court must address the liquidation of Seghers' claims for abuse of process, malicious prosecution, and vexatious litigation. *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F. 3d 473,

---

[7] Hereinafter, all references to code sections are to the U.S. Bankruptcy Code found at title 11 of the U.S. Code.

[8] Seghers asserted a separate cause of action for punitive damages in his Complaint. At Trial, counsel for Seghers clarified that this cause of action was instead a request for damages arising under his claims for abuse of process, malicious prosecution, and vexatious litigation. 9:21:55 - 9:22:40 (May 2, 2019).

478-80 (5th Cir. 2009). Whether Johansen is liable to Seghers requires an examination of state law. *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007).

### A. Liquidation of Claims

Seghers' causes of action for abuse of process, malicious prosecution, and vexatious litigation rest solely on Johansen's institution of the Circuit Lawsuit. The Court will consider each cause of action in turn.

#### 1. Abuse of Process

Under Mississippi law, the elements of a claim for abuse of process are: (1) an illegal use of process; (2) an ulterior motive for exercising such illegal use of process; and (3) damage resulting from the perverted use of process. *Miles v. Paul Moak of Ridgeland, Inc.*, 113 So. 3d 580, 586-87 (Miss. Ct. App. 2012). Each element must be proved by a preponderance of the evidence. *Id.* A claim for abuse of process differs from an action for malicious prosecution. The tort of malicious prosecution is concerned with *maliciously* causing process *to issue*, whereas the focus of the tort of abuse of process is on the improper use of process *after* it has been issued. *Id.* The crucial element of an abuse of process claim is the intent to abuse the privileges of the legal system. *Id.*

In *Edmonds v. Delta Democrat Publ'g Co.*, 93 So. 2d 171 (Miss. 1957), the Mississippi Supreme Court provided helpful guidance as to the outer limits of an abuse of process claim. There, the Mississippi Supreme Court explained that an abuse of process claim typically lies "where through the employment of process[,] a man has been arrested or his property seized in order to extort payment of money from him . . . or to prevent a conveyance, or to compel him to give up possession to some thing or [sic] value, when such were not the legal objects of the suit."

*Id.* at 175.  An abuse of process claim does not exist, however, "when the only process involved was a simple summon to defend the suit."  *Id.*

In this matter, Seghers alleges that Johansen's filing of the Circuit Lawsuit was an abuse of process because it was "baseless, malicious and irresponsible" and "was done maliciously, for spiteful and abusive purposes."  (Compl. ¶ 9).  Seghers specifically asserts that Johansen initiated the Circuit Lawsuit out of anger and dissatisfaction with the Final Report.  He maintains that Johansen was well aware that he was not acting for his employer WINK when he arbitrated the construction dispute but sued WINK anyway.  (PTO at 4).  Seghers further contends that Johansen knew or should have known that arbitrators are immune from suit by virtue of quasi-judicial immunity.

Even assuming the truth of his allegations, Seghers failed to produce any evidence at Trial demonstrating that Johansen engaged in any bad faith conduct *after* the institution of the Circuit Lawsuit.  Here, like in *Edmonds*, the only civil process involved was service of the summons requiring Seghers to defend the Circuit Lawsuit.  *Edmonds*, 93 So. 2d at 175.  Yet "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  *Brown v. Edwards*, 721 F.2d 1442, 1455 (5th Circ. 1984) (quotation & citation omitted).  In the absence of any evidence that Johansen used the Circuit Lawsuit to compel Seghers to act in a collateral way, Seghers has failed to prove the existence of the first element of the tort, and his abuse of process claim fails.

### 2. **Malicious Prosecution**

To succeed on his claim for malicious prosecution, Seghers must prove by a preponderance of the evidence the following six elements: (1) the institution or continuation of a criminal or civil proceeding; (2) by, or at Johansen's insistence; (3) the termination of such proceeding in Seghers'

favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the suffering of the injury or damage as a result of the action. *Robinson v. Hill City Oil Co.*, 2 So. 3d 661, 665 (Miss. Ct. App. 2008). Johansen conceded at Trial the existence of elements one and two but disputed the remaining four elements. Specifically, Johansen disputed that the Circuit Lawsuit terminated in Seghers' favor, that he initiated the Circuit Lawsuit without probable cause, and that Seghers sustained damages as a result of his actions. Because the Court agrees that Seghers has not met his burden of proving damages, an analysis of the remaining elements is unnecessary.

As stated above, Seghers must prove that he was injured or damaged as a result of Johansen's alleged bad faith actions. Seghers maintains that Johansen's filing of the Circuit Lawsuit against him and his employer WINK resulted in his loss of employment with WINK. In the PTO, Seghers claims total damages of $1,375,482.69, consisting of his loss of salary and benefits, loss of future salary increases, loss of bonuses, attorney's fees, and punitive damages. (PTO at 5). As proof that he lost his job because of Johansen's alleged bad faith conduct, Seghers testified at Trial that he was served with process at WINK's engineering office in Biloxi, Mississippi, and that WINK was served simultaneously.[9] Seghers further testified that following service of the Circuit Lawsuit on WINK, he was called into a meeting by one of WINK's owners and WINK's in-house counsel.[10] Seghers stated that during the meeting, he was confronted with the Circuit Lawsuit against WINK, and that following a discussion, WINK terminated his

---

[9] Test. of Seghers at 10:37:33 – 10:37:54 (May 1, 2019).

[10] *Id.* at 10:38:00 – 10:39:15 (May 1, 2019).

employment "immediately."[11] Nothing besides the Circuit Lawsuit was discussed at that meeting, according to Seghers.[12]

The Court finds that the evidence Seghers produced is insufficient to establish that his loss of employment and the damages he allegedly sustained, in connection with his termination, stem from the Circuit Lawsuit. In order to recover damages, Seghers must show that his loss of employment was proximately caused by the Circuit Lawsuit. *Lauck v. Gilbert*, 173 So. 2d 626, 639 (Miss. 1965). Proximate cause exists where the conduct is both the cause in fact and legal cause of the damage. *Glenn v. Peoples*, 185 So. 3d 981, 986 (Miss. 2015). The cause in fact of an injury is "that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred." *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004). The legal cause exists where the damages are of the particular kind of harm that reasonably could be expected to flow from the defendant's conduct. *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007).

No representative of WINK testified at Trial, and no documents were introduced into evidence at Trial regarding the reason for the termination of Seghers' employment. Further, Seghers presented no testimony concerning whether his damages fall within the particular kind or class of harm which reasonably could be expected to flow from the Circuit Lawsuit. Because Seghers has failed to prove that the Circuit Lawsuit against him proximately caused his termination from WINK, he cannot show that he sustained any damages. His failure to prove the sixth element is fatal to his malicious prosecution claim.

---

[11] *Id.*

[12] *Id.* at 10:39:18 – 10:39:27 (May 1, 2019).

### 3.    Vexatious Litigation

Seghers seeks attorney's fees against Johansen under the Mississippi Litigation Accountability Act ("MLAA"), MISS. CODE ANN. § 11-55-1, *et seq.*[13] Section 11-55-5(1) provides as follows:

> [I]n any civil action commenced or appealed *in any court of record in this state*, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

MISS. CODE ANN. § 11-55-5(1) (emphasis added).

Based on plain reading of the statute, MLAA does not create a separate cause of action for the recovery of attorney's fees and costs. *Rose v. Tullos*, 994 So. 2d 734, 737 (Miss. 2008). "[A] claim for attorney's fees and costs in any civil action must be brought 'upon motion of any party or on [the court's] own motion.'" *Rose*, 994 So. 2d at 737 (quoting MISS. CODE ANN. § 11-55-5(1)). Further, the language in the statute that "the court shall award, as part of its judgment and in addition to any other costs assessed, reasonable attorney's fees" indicates that any judgment must be "part of the original action . . . not an independent judgment in and of itself." *Randolph v. Lambert*, 926 So. 2d 941, 945 (Miss. Ct. App. 2006) (quoting MISS. CODE ANN. § 11-55-5(1)).

Seghers' claim for attorney's fees and costs under the MLAA arises, if at all, from his

---

[13] The MLAA applies here given that Johansen filed the Circuit Lawsuit in state court. *See Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) (affirming the district court's consideration of a motion for sanctions filed under Texas procedural rules where the allegedly frivolous complaint was filed in state court); *see also Moore v. Oliver*, No. 3:17-cv-408-DPJ-FKB, 2018 WL 5289906, at *2-3 (S.D. Miss. Oct. 24, 2018).

defense of the Circuit Lawsuit. Because the Court may not award attorney's fees and costs under the MLAA as an independent judgment,[14] Seghers' vexatious litigation claim in the Adversary should be denied.

**B.      Dischargeability**

Having found that Seghers' claims for abuse of process, malicious prosecution, and vexatious litigation lack merit, the Court need not consider the dischargeability issue.

## Conclusion

For the above and foregoing reasons, the Court finds that Seghers has not proved that Johansen is liable to him for his claims of abuse of process, malicious prosecution, and vexatious litigation. Therefore, the Court must deny Seghers' request that his claims be excepted from discharge. A separate judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

Although the Court is aware that the Circuit Lawsuit remains pending, its current posture is unknown. The dismissal of Seghers' claims in the Adversary should result in the dismissal of the counterclaim in the Circuit Lawsuit. *Gibson v. Williams, William & Montgomery P.A.*, 186 So. 3d 836, 844 (Miss. 2016) (discussing doctrine of *res judicata*). As to Johansen's claims, the Court notes that the automatic stay under § 362 does not apply to lawsuits initiated by a debtor. *See U.S. Abatement Corp. v. Mobil Expl. & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 49 F.3d 563, 568 (5th Cir. 1994). Because the Bankruptcy Case was filed under chapter 7, however, the proper party in interest to pursue Johansen's claims in the Circuit Lawsuit is the chapter 7

---

[14] No judgment has been entered in the Circuit Lawsuit and, regardless, Seghers has not sought relief from the automatic stay to request attorney's fees and costs in the Circuit Lawsuit. Moreover, Seghers did not seek to remove the Circuit Lawsuit to the District Court.

trustee, not Johansen.  *See, e.g., Sheppard v. Wells Fargo Fin. Leasing, Inc.*, No. 06-65467, 2006 WL 5691617, at *2 (Bankr. N.D. Ga. June 13, 2006).

##END OF OPINION##